## In re Ewart et al.

*Truscott & Rothenberg*, and *Joseph A. Keough*, for plaintiffs.

*J. Charles Short* and *Alex. Satinsky*, for Pennsylvania Labor Relations Board.

LEVINTHAL, J., July 16, 1941.—The two petitions for review of the decisions and final orders of the Pennsylvania Labor Relations Board, with reference to Ewart's Cafeteria and its employes, constitute separate proceedings, but are so closely interrelated as to call for joint consideration and disposition.

The cafeteria in the basement of the Franklin Trust Building, at Fifteenth and Chestnut Streets, in Philadelphia, is one of several restaurants owned and operated by W. C. Ewart and A. G. Earnest, copartners trading as Ewart's Cafeteria. William Edward Scott manages and supervises the local cafeteria, with authority to hire and discharge employes.

On or about January 9, 1939, the representative of the Hotel and Restaurant Workers Industrial Union, Local No. 356, affiliated with the Congress of Industrial Organizations, claiming to represent a majority of the 73 persons employed in the cafeteria, made demand upon Mr. Ewart, one of the proprietors, for an increase in wages and for the execution of a collective bargaining contract containing a closed shop agreement. Mr. Ewart refused to recognize the union or to execute the proposed contract, and on January 25, 1939, a strike was called, in which approximately thirty-four of the employes participated.

The day after the strike began, Mr. Scott received a letter informing him of the formation by five of the employes of an organization known as Ewart's Employees' Association. There had been an informal discussion among the organizers of this association on January 20, 1939, and on January 25, 1939, a formal organization meeting was held at the office of an attorney of their own independent selection. On February 6, 1939, Ewart's Employees' Association filed its petition with the Pennsylvania Labor Relations Board for certification as bargaining representative of the employes of the cafeteria. Two months later an election was held, at which 46 of the 73 eligible voters voted, and all of them in favor of Ewart's Employees' Association.

The day after the election, charges were preferred by the Hotel and Restaurant Workers' Industrial Union, Local No. 356, that the proprietors of the cafeteria had committed unfair labor practices in interfering with their employes in the exercise of their right of self-organization and had interfered with the formation and administration of, and had given support to, Ewart's Employees' Association.

The board dismissed the petition of Ewart's Employees' Association for certification on the ground that it was a company-dominated union. Ewart's Employees'

Association has petitioned for a review of this action of the board. The board also sustained the charges of unfair labor practices preferred against the employers by the Hotel and Restaurant Workers' Union, Local No. 356, and entered an order directing the employers "to cease and desist from in any manner dominating or interfering with, or contributing support to, Ewart's Employees' Association ,or any other labor organization", and to take the affirmative action of withdrawing all recognition from Ewart's Employees' Association as the representative of its employes for the purposes of collective bargaining. The employers have filed their petition for review of this decision and final order of the board.

The statute which created the Pennsylvania Labor Relations Board provides that it shall be an unfair labor practice for an employer to "dominate or interfere with the formation or administration of any labor organization, or contribute financial or other material support to it": Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, sec. 6(1) (b), as amended by the Act of June 9, 1939, P. L. 293, sec. 1, 43 PS §211.6. The act also provides that findings of the board on which an order is based must be supported by substantial and legally credible evidence and, if so supported, the findings shall be binding and conclusive upon review: 43 PS §211.9(b).

In its very recent decision, filed June 30, 1941, in the matter of the Union Trust Company of Pittsburgh's Petition, 342 Pa. 456, the Supreme Court of Pennsylvania affirmed the decree of the Court of Common Pleas of Allegheny County setting aside an order of the Pennsylvania Labor Relations Board, on the ground that there was no substantial and credible evidence to support it. The lower court in that case restated the definition of "substantial evidence" as set forth by the Supreme Court of the United States in N. L. R. B. v. Columbia Enameling & Stamping Co., 306 U. S. 292, 299, 300 (1939):

"Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion', . . . and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . ."

It is, of course, equally well established that where the findings of fact made by the board are based upon competent evidence they are conclusive. As our Superior Court, with the full approval of our Supreme Court, has said in an analogous situation:

"Neither the lower court nor an appellate court can say that the board must find one way or another. Although it may feel that the weight of the evidence, as a whole, is against the finding of fact so made, it may not disturb that finding if it is supported by sufficient legally competent evidence. There can be no interference by the courts with such findings, whether they be based on proved facts or inferences therefrom": Paulin v. Williams & Co. et al., 327 Pa. 579, 583 (1937).

In analyzing the testimony heard by the trial examiner of the labor board, we are constrained to conclude that many of the findings of fact in these proceedings, particularly those relating to the actions of the organizers of the Employees' Association, are incompetent to establish any unfair labor practice on the part of the employers. The leading figures in the association were not supervisory employes, and their actions could not in any sense be attributed to their employers. Thus, the solicitation of members by them, even on the employers' premises, and the use by one of them of the employers' typewriter to fill out membership application blanks, and the collection by another of membership dues, cannot, in the absence of proof of knowledge and acquiescence on the part of the employers or their

manager, be regarded as the basis of a conclusion that the employers had dominated or interfered with the formation of the association. Nor can it be reasonably inferred that the association was company-dominated merely because it had no grievances against the employers and was organized principally as a protest against the Congress of Industrial Organizations union. There is nothing in the law preventing a group of employes from organizing, independently and spontaneously and without help from the employers, an "inside" union in order to combat the organization of an "outside" union.

There is,. however, one item of evidence involving the conduct of Mr. Scott, the manager of the cafeteria, from which the board might reasonably infer, as it did, that the employers, through their agent and representative, had improperly interfered with the exercise of their employes' right of self-organization. Mr. Scott himself testified that he had been instructed to give an increase in salary to all the employes as of January 22, 1939. The payroll was made up by him on January 28th. During that interval the strike had been called by the Congress of Industrial Organizations union and he had been informed of the formation of the association. The manager gave the increased wage only to those employes who had not joined the strike. He testified that this was done by him without consulting the proprietors of the restaurant, and that later when one of them learned of the discrimination between the striking and the working employes he expressed the opinion that what the manager had done was wrong. But, said Mr. Scott, "it was done, and there was nothing to be done about it."

In section 3 (c) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, the term "employer" is defined as including "any person acting, directly or indirectly, in the interest of an employer . . ." There can be no doubt that Mr. Scott, as manager of the

cafeteria, was a supervisory employe of such high rank and possessed such ostensible authority that his actions may properly be imputed to the proprietors of the business whose representative he was. The owners could not absolve themselves from responsibility for their manager's act merely by privately disapproving it. If the employers were really impartial as between the competing labor organizations and wanted the employes to know that they might with safety join whichever union they desired, or neither one, they would have corrected the "error" of their manager by paying the strikers the increased wages to which they were entitled, and by publicly disavowing their agent's discriminatory conduct.

It is contended that the amount of the wage increase for the average employe was trivial, and that the board should therefore have disregarded the manager's "bad judgment". In our opinion, the maxim "de minimis non curat lex" has no application, for employers may clearly manifest their active preference for one labor union and their intense displeasure with another by resorting to the most trifling forms of discrimination.

Perhaps, if we were the triers of the facts in this case, we would not have drawn the same inference from this testimony as was deduced by the board, but we cannot say that there was not competent and substantial evidence to support the board's conclusion. "When once it appears that management has had a hand in organizing, supporting or *in any wise* interfering or collaborating with an 'association' of employees, such an association may not be recognized as the free and voluntary association of employees called for in the act": N. L. R. B. v. Brown Paper Mill Co., Inc., 108 F.(2) 867, 871 (1940), certiorari denied, 310 U. S. 651 (1940). (Italics supplied.)

We are of the opinion that the dismissal of the petition of Ewart's Employees' Association for certification should not be disturbed by us. Similarly, the

board's findings that the employers had committed unfair labor practices must be regarded as conclusive. As we had occasion to say in discussing the question of judicial review of administrative discretion in the case of In re "Spain in Flames", 36 D. & C. 285, 289, 290 (1937):

"Every reasonable doubt must be resolved by us in behalf of the administrative action, lest we arrogate to ourselves the functions of legislator and administrator. We are mindful that Mr. Justice Stone [the present Chief Justice] recently felt compelled, in a dissenting opinion, to say of courts that 'the only check upon our own exercise of power is our own sense of self-restraint. For the removal of unwise laws from the statute books appeal lies not to the courts but to the ballot and to the processes of democratic government. . . . Courts are not the only agency of government that must be assumed to have capacity to govern.': *United States v. Butler et al., etc.*, 297 U. S. 1, 79, 87 (1936)."

It is argued by the employers that, even if the complaint filed by the C. I. O. union be regarded as having been established by competent evidence, it should nevertheless have been dismissed by the board, because the complainant union had itself engaged in unfair labor practices. The Act of June 9, 1939, P. L. 293, sec. 2, 43 PS §211.10.1, provides:

"Whenever the board shall find, as part of its findings of fact in any proceeding before it, that the party or parties filing charges of unfair labor practices upon which the complaint was based have engaged in an unfair labor practice (as defined in section six [43 PS sec. 211.6]) in connection with or as part of the actions forming the basis of the complaint, such findings shall constitute a complete defense to the complaint, and no order shall issue thereon against the person charged."

The labor board has found, and its findings are amply supported by substantial evidence, that in conducting its strike the union resorted to grossly improper

tactics. Thus, large numbers of slovenly and unkempt persons were instigated to invade the restaurant at the busiest time of the day. Each of these persons would sit at a separate table, spreading a newspaper over it and covering the unoccupied chairs with various articles of clothing and other objects. Thus, the regular patrons of the restaurant were excluded, and the business of its proprietors seriously disrupted. The police properly intervened. The union representative also caused one of the proprietors of the restaurant to be arrested on a criminal charge, and this arrest was obviously instituted without justification and for the purpose of compelling the employers to accede to the union's demands.

The board originally dismissed the complaint against the employers because of this misconduct of the complainant union. The board, however, subsequently vacated its order of dismissal and issued the final order against the employers which is before us for review.

We are of the opinion that the above provision of the amendatory Act of 1939, which forfeits the rights of a complainant found to have engaged in unfair labor practices, does not call for the dismissal of the union's complaint in this case. First, the statute which was enacted after the complaint had been filed by the union cannot be retroactively applied to it: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 56, and art. V, sec. 73, 46 PS §§556 and 573. Secondly, the misconduct of the union, grossly improper though it was, cannot be regarded as an unfair labor practice "in connection with or as part of the actions forming the basis of the complaint", as specifically provided in the amendatory statute. The coercive and intimidating tactics of the union in waging its industrial battle were in no way connected with the interference by the employers with their employes' right of self-organization.

The final order of the board directing the employers to cease and desist from dominating the association, or

supporting it, and requiring the employers to withdraw all recognition from the association as their employes' collective bargaining representative, is supported by substantial evidence and is in accord with the provisions of the statute. In order, however, that there be no misunderstanding of the extent of the board's decision, it is our opinion that paragraph 2 (*a*) of the order should be amended by adding to it the following: ". . . but the employes are in the future to be free to organize or join any union they choose, whether or not it is affiliated with a national union." This amendment is directed to be made so that the employes may all realize that the present disestablishment of Ewart's Employees' Association will not deprive them of the right, independently and without interference or assistance from their employers or their agents, to organize and join a similar "inside" union if they so elect to do. In making this amendment of the order we are relying upon the authority of the recent decision of the United States Circuit Court of Appeals for the Third Circuit in Roebling Employees' Assn., Inc., v. N. L. R. B. et al., 120 F.(2d) 289 (1941), which in turn followed the precedent established by the Circuit Court of Appeals for the Second Circuit in Westinghouse Electric & Mfg. Co. v. N. L. R. B., 112 F.(2d) 657 (1940), aff'd. 312 U. S. 660.

## Decree

And now, to wit, July 16, 1941, the petition for review filed by W. C. Ewart and A. G. Earnest, copartners, trading as Ewart's Cafeteria, is dismissed and the final order of the labor board, as modified by the foregoing opinion, is affirmed.

And now, to wit, July 16, 1941, the petition for review filed by Ewart's Employees' Association is dismissed and the order of the board is affirmed.